UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

CHRISTOPHER LOPEZ,

                Plaintiff,

-against-

CITY OF NEW YORK,

                Defendant.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**14-CV-3285 (NGG) (RLM)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Christopher Lopez (alternatively, "Lopez" or "Plaintiff") brings this action against Defendant, the City of New York[1] (alternatively, "the City" or "Defendant"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Am. Compl. (Dkt. 33-1).)[2] Defendant moves to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. of Mot. to Dismiss (Dkt. 36).) For the reasons discussed below, Defendant's motion to dismiss is GRANTED; however, Plaintiff is granted leave to file a second amended complaint.

---

[1] Although Plaintiff originally filed his claims against the FDNY (see Compl. (Dkt. 1)), his subsequent amendment has clarified that the proper Defendant is the City of New York (Am. Compl. (Dkt. 33-1)). For absolute clarity, the caption is amended to clarify that the City of New York is the Defendant.

[2] The court notes that Plaintiff has filed multiple proposed Amended Complaints. The court explains the relevant procedural history below. (See infra Part I.B.)

1

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the Second Amended Complaint and are assumed to be true for the purposes of this motion.[3]

Plaintiff is a Hispanic American man from Kings County, New York. (Am. Compl. ¶ 6.) He was found to have been the victim of discriminatory hiring practices by the Fire Department of the City of New York ("FDNY") in United States of America v. City of New York, No. 07-CV-2067 (NGG) (RLM), and was therefore designated as a priority hire. (Id. ¶ 8.) See United States v. City of New York, 637 F. Supp. 2d 77 (E.D.N.Y. 2009); United States v. City of New York, No. 07-CV-2067 (NGG) (RLM), 2011 WL 6131136 (E.D.N.Y. Dec. 8, 2011).[4] Plaintiff took and passed exam 2000 in or about December of 2012, pursuant to the court ordered

---

[3] The court notes that Plaintiff attached many documents to the original Complaint, but that not all of those documents were attached to the Amended Complaint. "Because 'courts apply the general rule recognizing that an amended pleading completely replaces the original pleading,' the exhibits attached to the Complaint (but not attached to the Amended Complaint) are not available for consideration by the Court." Atlas Partners, LLC v. STMicroelectronics, Int'l N.V., No. 14-CV-7134 (VM), 2015 WL 4940126, at *7 n.3 (S.D.N.Y. Aug. 10, 2015) (quoting Brooks v. 1st Precinct Police Dep't, No. 11-CV-6070 (MKB), 2014 WL 1875037, at *3 (E.D.N.Y. May 9, 2014)).

Nonetheless, documents that are incorporated into the Amended Complaint by reference or that are integral to the Amended Complaint may be reviewed on a motion to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). Those documents need not be attached to the Complaint in order to be considered in a motion to dismiss. Id. at 153 (finding that the court could consider contracts attached to the defendant's affidavits so long as the plaintiff "has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint" (internal quotation marks omitted)).

A document is integral to a complaint if the plaintiff relied heavily upon that document's "terms and effect" when constructing his complaint. See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 63 F.3d 69, 72 (2d Cir. 1995); see also Immaculate Heart Cent. Sch. v. N.Y. State Public High Sch. Athletic Ass'n, 797 F. Supp. 2d 204, 209 (N.D.N.Y. 2011). The original Complaint contained many documents, such as Plaintiff's file in entirety which was reviewed by the Personnel Review Board ("PRB") and newspaper clippings. (Compl. (Dkt.1).) Here, the court has found that only the PRB guidelines are integral to the Amended Complaint. Plaintiff cites to the guidelines in his Amended Complaint several times, to highlight the policies set forth by the PRB and how Plaintiff alleges that his disqualification violated those policies. (Am. Compl. ¶ 14, 29; see also PRB Guidelines (Compl. (Dkt. 1)).) Thus, the court will consider the PRB guidelines.

[4] The court assumes familiarity with United States v. City of New York, No. 07-CV-2067 (NGG) (RML) (E.D.N.Y.).

settlement. (Am. Compl. ¶ 9.) The FDNY began Plaintiff's background investigation in February 2013.[5] (Id. ¶ 10.) Plaintiff passed the medical test, the candidate physical abilities test ("CPAT"), and the psychological exams. (Id. ¶ 11.)

Antony Hamilton ("Hamilton"), the Investigator for the Candidate Investigation Division of the FDNY, was assigned to review Lopez's application. (Id. ¶ 25.) Plaintiff claims that Hamilton requested that Plaintiff prepare written statements and provide more information to complete certain portions of the hiring process, whereas, other minority candidates were not required to provide additional materials. (Id. ¶ 26.) Lopez alleges that Hamilton treated him differently than other priority hires because Hamilton did not believe that Lopez was a minority (due to Lopez's light skin). (Id. ¶ 27.)

On or about June 21, 2013, Plaintiff received a proposed disqualification from the Personnel Review Board ("PRB") denying him a position with the FDNY, due to his: (1) military history, (2) driver's license history, and (3) criminal history. (Id. ¶ 12.) The PRB reviews the files of candidates who have been flagged for further review during the initial screening phase and determines if they can nonetheless become firefighters. (PRB Guidelines (Compl.) at 59.) Plaintiff claims that Hamilton placed misleading information in Plaintiff's PRB file, including: (1) a criminal conviction without the accompanying certification of good conduct/certificate of relief from disabilities, (2) information that his military history was negative, and (3) other misleading information. (Am. Compl. ¶ 28.) Lopez further alleges that the PRB members who reviewed his file had contact with outside individuals in violation of the PRB guidelines. (Id. ¶ 29.)

---

[5] The background investigation is a standard part of the FDNY hiring practices. (See generally PRB Guidelines at 59-70.)

3

In July 2013, Plaintiff appealed his proposed disqualification to the Candidate Investigation Division, which reviews applicant files from the PRB, but claims he never received a response. (Id. ¶ 17.) In September 2013, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on national origin. (Id. ¶ 18.) As evidence, he claimed that a number of African Americans with prior convictions were hired instead of him, despite the fact that he had no prior convictions. (Id.) Later in September 2013, Plaintiff received a notice of final disqualification from the PRB that mirrored his preliminary disqualification. (Id. ¶¶ 12, 19.) Lopez alleges that the final disqualification was sent in retaliation for filing his EEOC complaint and due to his Hispanic national origin. (Id. ¶ 20.) Soon thereafter, Plaintiff appealed his final disqualification to the New York City Civil Service Commission. (Id. ¶ 21.) The New York City Civil Service Commission hears Candidate Appeals and is the administrative equivalent of an appellate court; it reviews the record and makes a determination which is final and binding, unless appealed to the New York State Supreme Court. See N.Y.C. Charter § 813(d); N.Y. Civ. Serv. Law § 50(4).

Lopez disputes the grounds asserted in the September 2013 disqualification. First, Lopez alleges that his military history is not negative because he received an uncharacterized entry level performance and conduct discharge, which is legally designated as a neutral discharge. (Am. Compl. ¶ 13.) He further states that he has a reentry code to reenlist in the military, and that veterans with a negative military history are not given a reentry code. (Id.) Second, Plaintiff claims that under PRB guidelines, his driver license history is not "admissible as to moral character," and thus, is not grounds for disqualification. (Id. ¶ 14.) Third, Lopez states that he had no prior criminal convictions. (Id. ¶ 15.) In any event, Plaintiff alleges that on or about June 21, 2013, the PRB did not disqualify a number of African American priority hires with prior

criminal convictions. (Id. ¶¶ 15-16.) Lopez further claims that in some of those cases, the candidates were incarcerated for their crimes and many of those candidates had no certificate of good conduct, which is a mandatory requirement for the appointment to a civil service position in New York City. (Id. ¶ 16.)

In December 2013, Lopez amended his complaint with the EEOC to reflect an alleged inconsistency in the applicant screening process. (Id. ¶ 22.) In February 2014, the PRB amended Plaintiff's final disqualification to state that he was not fit for duty because of his military and employment history. (Id. ¶ 23.) Plaintiff alleges that he never received an opportunity to appeal the February 2014 amended disqualification. (Id. ¶ 24.)

In March 2014, the EEOC issued Plaintiff a right to sue letter and Plaintiff filed suit in May 2014. (Id. ¶ 30.) In February 2015, the Civil Service Commission held oral argument on Plaintiff's claim of disparate treatment by the PRB and affirmed Plaintiff's disqualification. (Id. ¶¶ 31-32.) Lopez alleges that the decision was rendered within 72 hours, when most decisions take at least 30 days. (Id. ¶ 32.)

Lopez asserts three causes of action. (Id. ¶¶ 36-41.) Count One alleges that Plaintiff was subjected to disparate treatment and a discriminatory non-hiring based on his national origin (light skinned-Hispanic) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. (Id. ¶ 37.) Count Two alleges that Plaintiff was subjected to disparate treatment and a refusal to hire based on retaliation in violation of Title VII of the Civil Rights Act. (Id. ¶ 39.) And, Count Three alleges that Defendant violated New York City Human Rights Law by discriminating against Plaintiff on the basis of his unemployment, national origin, and retaliation. (Id. ¶ 41.)

## B. Procedural Background

Plaintiff filed his Complaint on May 22, 2014. (Compl. (Dkt. 1).) On May 27, 2015, Plaintiff moved to amend his Complaint, and attached a proposed Amended Complaint. (See Mot. to Am. (Dkt. 23); Proposed Am. Compl. (Dkt. 23-1).) Defendant opposed the motion. (See Opp'n to Pl.'s Mot. to Am. (Dkt. 24).) Before the court could decide the motion, the parties consented to Plaintiff filing a new Amended Complaint. (See Consent Mot. to Am. (Dkt. 33); Am. Compl. (Dkt. 33-1).) The court granted the parties' joint motion to amend. (Sept. 28, 2015, Order.) Defendants now move to dismiss the Amended Complaint. (Not. of Mot. to Dismiss (Dkt. 35).)

## II. LEGAL STANDARD

### A. Motion to Dismiss

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing a complaint, the court must accept as true all allegations of fact, and draw reasonable inferences from the allegations in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a 'probability requirement,'" but requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id. "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis in original) (quoting Twombly, 550 U.S at 555).

## B. Disparate Treatment

To survive a motion to dismiss in an employment discrimination case, a "plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015).[6] The court can dismiss the complaint, "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. at 514 (internal quotation marks and citation omitted). In this case, the adverse action Plaintiff alleges is failure to hire, which qualifies as an adverse employment action. Id. at 85. Thus, the complaint survives so long as a plaintiff alleges facts "from which the Court can infer that it is plausible that the plaintiff was not hired because of unlawful discrimination." See Riddle v. Citigroup, No. 13-CV-6833 (AKH), 2014 WL 2767180, at *2 (S.D.N.Y. May 29, 2014).

## C. Retaliation

In order for a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." Vega, 801 F.3d

---

[6] Although both parties briefed the McDonnell Douglas standard and how the burden of proof shifts in proving racial discrimination, that standard is not relevant at the motion to dismiss phase. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002). There is no "heightened pleading standard for employment discrimination suits." Id. at 515. Indeed, "[t]he prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement." Id. at 510. "[The Supreme] Court has never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." Id. at 511.

7

at 90 (internal citation and quotation marks omitted). The Supreme Court has defined an adverse employment action in the context of a Title VII retaliation claim as "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Id. (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)).

In deciding a retaliation claim, context is particularly important because "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a single recitation of the words used or the physical acts performed." Burlington N., 548 U.S. at 69 (internal quotation marks omitted) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998)). Nonetheless, a plaintiff must plausibly allege that "the retaliation was a 'but-for' cause of the employer's adverse action" to demonstrate that "the adverse action would not have occurred in the absence of the retaliatory motive." Vega, 801 F.3d at 90-91 (quoting Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013)).

### D. New York City Human Rights Law

According to the Second Circuit, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims . . . construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (quoting Albunio v. City of New York, 16 N.Y.3d 472, 477-78 (2011)). "Thus, even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards." Id. The court must consider the "totality of the circumstances . . . because the overall context in

8

which [the challenged conduct occurs] cannot be ignored." Id. at 113 (internal citation and quotation marks omitted).

Section 8-107(1) of the NYCHRL states that it is unlawful for an employer to retaliate against protected activity. N.Y.C. Admin. Code § 8-107(1)(a). To establish a prima facie case of discrimination based on national origin under New York City law, a plaintiff "need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent." Mihalik, 715 F.3d at 110. However, "district courts must be mindful that the NYCHRL is not a 'general civility code'. . . . The plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." Id. (internal citation omitted).

Section 8-107(7) of the NYCHRL states that it is unlawful for an employer to discriminate on the basis of retaliation. N.Y.C. Admin. Code § 8-107(7). To establish a prima facie claim of retaliation under NYCHRL, a plaintiff must demonstrate that "(1) he participated in a protected activity known to the defendant; (2) the defendant took an employment action that disadvantaged the plaintiff; and (3) that a causal connection exist between the protected activity and the adverse employment action." Semanovic v. NYSE Grp., Inc., No. 06-CV-3046 (DAB), 2007 WL 4563431, at *5 (S.D.N.Y. Dec. 21, 2007) (internal citation and quotation marks omitted).

Section 8-107(21) of the NYCHRL states that it is unlawful for an employer to discriminate based on an individual's unemployment. N.Y.C. Admin. Code § 8-107(21). "[A]n employer, employment agency, or agent thereof shall not base an employment decision with regard to hiring, compensation or the terms, conditions or privileges of employment on an applicant's unemployment." Id.

9

## III. DISCUSSION

Defendant argues that Plaintiff is unable to allege a plausible discrimination claim because he has not pleaded facts that can support the inference that Defendant's decision not to hire Plaintiff was motivated by race. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem.") (Dkt. 36) at 2.) Likewise, Defendant argues that Plaintiff's retaliation claim is deficient because he has not pleaded facts that support an inference of retaliation. (Id.) Defendant also argues that Plaintiff's New York City Human Rights Law claims fail for similar reasons to the federal claims. (Id.) Furthermore, Defendant moves to dismiss the state law claims as abandoned because Plaintiff failed to respond to Defendant's argument. (Def.'s Reply Mem. of Law in Further Supp. of Def.'s Mot. to Dismiss ("Def.'s Reply Mem.") (Dkt. 39) at 2.) For the reasons stated below, the court DISMISSES Counts One and Two of the Amended Complaint WITHOUT PREJUDICE and DISSMISSES Count Three WITH PREJUDICE.

### A. Disparate Treatment

Plaintiff alleges that he was subject to disparate treatment when he was not hired as a firefighter. Plaintiff alleges that due to Hamilton's actions as the liaison between Plaintiff and the PRB, both the PRB and the Commission subjected Plaintiff to disparate treatment. Thus, Plaintiff's claim against the City is based on the cumulative effect of three actors: Hamilton, the PRB, and the Commission.

#### 1. Hamilton

Lopez claims that the reason he was not hired is that Hamilton "placed misleading information in Plaintiff's PRB file including a criminal conviction without the certificate of good conduct . . . and that his military history was negative in order to have him disqualified from the process. In addition . . . there was other false and misleading information placed in Plaintiff's

10

PRB file." (Am. Compl. ¶ 28.) Plaintiff alleges that Hamilton intentionally treated Plaintiff differently than the other priority hires because he did not believe that Plaintiff was a minority (due to his light skin color). (Id. ¶ 27.) Plaintiff claims this differential treatment caused him not to be hired.

The court notes that in making a plausibility determination as to discrimination claims, "the court must be mindful of the elusive nature of intentional discrimination." Vega, 801 F.3d at 86 (internal citation and quotation marks omitted). Because discrimination claims often rely on the "unstated intent and state of mind" of employers, plaintiffs must rely on "bits and pieces of information to support an inference of discrimination, i.e., a mosaic of intentional discrimination." Id. (internal citation and quotation marks omitted). Therefore, it is not just one allegation that leads to a plausible claim of discrimination, but the combination of many, that leads to an inference of unlawful discrimination. Id. Nonetheless, in order to survive a motion to dismiss in an employment discrimination case, a plaintiff must allege facts that can plausibly lead the court to infer that Plaintiff experienced adverse employment action on the basis of some protected class. See Henry v. NYC Health & Hosp. Corp., 18 F. Supp. 3d 396, 407 (S.D.N.Y. 2014).

Plaintiff has not alleged facts that give rise to the inference that Hamilton's behavior towards Plaintiff was based on national origin or motivated by racial animus. Plaintiff alleges that Hamilton treated him differently than the other candidates by requesting more "written statements," "more information to complete certain portions of the process," and by placing "misleading information in Plaintiff's PRB file" to have Plaintiff disqualified. (Am. Compl. ¶¶ 26, 28.)

11

Even if the court accepts that improper information was requested of Plaintiff and inserted into his file, Plaintiff has failed to allege that these actions were in any way related to his race or national origin.

First, Lopez has not alleged non-conclusory facts that suggest that Hamilton discriminated against him on the basis of race or national origin. All that Plaintiff alleges is that Hamilton discriminated against him because Hamilton did not believe that Plaintiff was Hispanic. (Id. ¶ 27.) However, Plaintiff has not pleaded facts that suggest that Hamilton did not believe that Plaintiff was Hispanic. The only relevant fact that Plaintiff alleges with regard to Hamilton's reasons for discriminating against him is that Plaintiff has light skin. (Id.) Critically, what Plaintiff does not do is allege any facts that in any way connect Plaintiff's allegedly light skin color to Hamilton's allegedly discriminatory conduct. Indeed, Plaintiff does not allege that Hamilton said anything, did anything, or even implied anything that suggests that Hamilton did not believe that Plaintiff was Hispanic. Thus, other than a conclusory statement as to Hamilton's state of mind, Plaintiff has failed to allege any facts indicative of Hamilton's racial bias. See Henry, 18 F. Supp. 3d at 410 (finding a plaintiff's claim regarding supervisor's "state of mind is conclusory" and dismissing the complaint).

Second, Plaintiff's circumstantial evidence of discrimination is also insufficient. Plaintiff argues that the court can infer bias because African Americans with criminal records were hired instead of Plaintiff. However, this allegation falls flat as to Hamilton's conduct because Plaintiff does not plead that Hamilton had any involvement in the hiring of those certain African Americans with criminal records. (Am. Compl. ¶ 16 (alleging that the review board, but not Hamilton, vote to hire a number of African Americans with criminal convictions).) Accordingly, the allegation that certain individuals with criminal records were hired instead of Plaintiffs says

12

nothing about Hamilton's state of mind when he allegedly requested that Plaintiff provide more information about certain topics and allegedly placed false information in Plaintiff's PRB file. Thus, the court finds no basis on which to conclude Hamilton's actions were related to any personal biases of race or national origin. See Williams v. Addie Mae Collins Cmty. Serv., No. 11-CIV-2265 (LAP), 2012 WL 4471544, at *4 (S.D.N.Y. Sept. 27, 2012) (dismissing plaintiff's allegation that defendant discriminated against her by not hiring her due to her race, color, and age because she failed to allege "any facially plausible nexus between her protected characteristics and [defendant's] failure to hire her").

### 2. PRB and the New York City Civil Service Commission

Plaintiff also claims that the PRB discriminated against him on the basis of his national origin by hiring African American candidates with criminal convictions. (Am. Compl. ¶¶ 15-16.) Plaintiff himself has no prior criminal convictions and therefore, he alleges that he was treated differently than other priority hires, based on national origin and the color of his skin. (Id. ¶¶ 18, 34, 37.) However, Plaintiff has failed to allege that the PRB even knew the race or national origin of any applicants.[7] (PRB Guidelines at 65.) Additionally, although Plaintiff has alleged that similarly situated applicants were given preferential treatment, he fails to allege that the PRB was aware of the race of those applicants when reviewing their files. See Henry, 18 F. Supp. 3d at 408. Thus, Plaintiff fails to allege facts that lead to the inference that discrimination occurred and his claim that African Americans were hired over him in a discriminatory manner is without merit.

---

[7] Plaintiff argues in his brief that last names such as "Lopez" and "Williams" reflect the race of an individual. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") (Dkt. 38) at 7-8.) However, Plaintiff does not allege that anyone with the last name "Williams" was even hired and in any event, Plaintiff has failed to allege how, if at all, the PRB was able to uncover the last names of the applicants as the PRB Guidelines explicitly state that the files it reviews are anonymous. (PRB Guidelines at 65.)

13

Furthermore, Plaintiff alleges that the initial voting members of the PRB had wrongful contact with outside individuals, in violation of the PRB guidelines. (Am. Compl. ¶ 29.) However, Plaintiff alleges nothing in support of this theory. Additionally, even if wrongful contact occurred, Plaintiff fails to allege that this discussion concerned the national origin or race of the applicants. Thus, Plaintiff's claim that the PRB discussed applicants outside the group in violation of the PRB guidelines does not support a Title VII claim.

Plaintiff alleges that the New York City Civil Service Commission's decision was discriminatory. (Id. ¶ 32.) Specifically, Plaintiff alleges that during oral arguments in front of the Commission, it was so crowded his own family members could not attend and that the decision was received within 72 hours when most decisions take at least 30 days. (Id. ¶¶ 31-32.) Neither of these allegations create a plausible inference that the Commission affirmed Plaintiff's disqualification on the basis of discriminatory animus. As a result, Plaintiff has failed to allege enough facts to create a plausible inference that he was disqualified from the position as a probationary firefighter on the basis of national origin.

Thus, Count One is DISSMISED WITHOUT PREJUDICE.[8]

## B. Retaliation

Plaintiff alleges three instances of retaliation. First, Lopez alleges that the PRB retaliated against him by sending him a notice of final disqualification shortly after he filed a complaint

---

[8] It is possible that Plaintiff could plausibly allege disparate treatment based on national origin against Hamilton, the PRB, and the Commission, under the "cat's paw" theory of liability. "Cat's paw" liability is the theory that an employer can be held liable for the "animus of a supervisor who was not charged with making the ultimate employment decision." See Staub v. Proctor Hosp., 562 U.S. 411, 415 (2011). If the entity that makes the ultimate decision of employment relies on the opinions or what is provided to them from a supervisor who engages in discriminatory behavior, then by the "cat's paw" theory, that entity can be found responsible for the discriminatory intent of the supervisor. Id. at 421 ("The employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision."). If Plaintiff alleges more facts that demonstrate that Hamilton put information in Plaintiff's file to have him disqualified on account of national origin, then Plaintiff might be able to hold both the PRB and the Commission responsible for discrimination based on disparate treatment under "cat's paw" for "effectively delegat[ing] the factfinding portion of the investigation to the biased supervisor." Staub, 562 U.S. at 421.

14

with the EEOC in September 2013. (Am. Compl. ¶ 20.) Second, Lopez alleges that the PRB retaliated against him by amending his final disqualification in February 2014, shortly after Lopez amended his EEOC complaint. (Id. ¶¶ 22-23, 38-39.) Last, Lopez alleges the New York City Civil Service Commission retaliated against him by affirming the PRB's disqualification in February 2015. (Id. ¶ 33.) The court addresses each of these allegations in turn.

1. September 2013 Final Disqualification

Plaintiff claims that shortly after he filed his complaint with the EEOC in September 2013, he received a notice of final disqualification, which he alleges was sent in retaliation for filing the EEOC complaint. (Id. ¶¶ 18-20.) When Plaintiff first filed his complaint with the EEOC, he alleged discrimination based on national origin because he claimed that a number of African Americans with prior criminal convictions were hired instead of him. (Id. ¶ 18.) He filed the complaint in response to the proposed disqualification that he received from the PRB on June 21, 2013, in which he was disqualified for his: (1) military history, (2) driver's license history, and (3) criminal history. (Id. ¶ 12.) Soon after filing the EEOC complaint, he received his final disqualification, which indicated that he would not be hired for the same three reasons. (Id. ¶¶ 12, 19.)

Plaintiff has not alleged sufficient facts in his Amended Complaint to plausibly state a claim that retaliation occurred in response to him filing an EEOC complaint in September 2013. It is well established that retaliation cannot precede protected activity. See Young v. Westchester Cnty. Dept. of Social Servs., 57 F. App'x. 492, 495 (2d Cir. 2003) (summary order) ("[W]here the adverse action was already ongoing at the time of the protected activity . . . logic precludes any inference of causation."). Here, Defendant notified Plaintiff that he would not be hired prior to Plaintiff filing a complaint with the EEOC. (Am. Compl. ¶ 12.) Following the

15

EEOC complaint, Defendant simply carried out that decision. The Supreme Court has held that "[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001). Plaintiff has not indicated that Defendants changed their stance at all following the EEOC complaint. Instead, Plaintiff alleges that Defendants simply finalized the proposed disqualification. (Am. Compl. ¶ 19.) Thus, Plaintiff has not plausibly alleged retaliation with regard to his first filing with the EEOC.

        2.     February 2014 Amended Disqualification

Lopez alleges that the PRB retaliated against him, when it amended his final disqualification letter approximately three months after he amended his EEOC complaint. (Id. ¶¶ 22-23.) In order to allege retaliation, a plaintiff must show a causal connection either directly through evidence of retaliatory animus, or indirectly by showing that the protected activity was followed closely in time by discriminatory treatment. See Butts v. N.Y.C. Dep't of Hous. Pres. and Dev., 307 F. Appx. 596 (2d Cir. 2009). Plaintiff argues that a causal connection between Plaintiff's protected activity and the subsequent retaliation exists because of the temporal proximity between the two events. (Pl.'s Opp'n at 11.) See also Vega, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action.").

However, courts in this circuit have consistently held that a time period of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation. See Dechberry v. N.Y.C. Fire Dep't, 124 F. Supp. 3d 131, 153-55 (E.D.N.Y. 2015) ("[D]istrict courts within the Second Circuit have consistently held that a

passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." (internal citation and quotation marks omitted)); Murray v. Visiting Nurse Servs. of N.Y., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases). Thus, Plaintiff has failed to plausibly allege a temporal proximity sufficient to plead causation.

Furthermore, even crediting Plaintiff's argument that the temporal proximity of the amended disqualification offers some indirect evidence of causation, the court should "exercise [its] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." Riddle v. Citigroup, No. 15-233-CV, 2016 WL 766571, at *2 (2d Cir. Feb. 29, 2016). Here, Plaintiff's allegations undercut a finding of causation. Indeed, the amended disqualification removed Plaintiff's driver's license and criminal history and added his employment history as a disqualifying factor, suggesting that the PRB was trying to fix an error and abide by the PRB guidelines. (Am. Compl. ¶¶ 22-23.) Indeed, Plaintiff himself argues that his driver's license history was not supposed to be in his file because his license did not have eight points or more and therefore, could not count as material that the PRB could consider in evaluating Plaintiff's application. (See PRB Guidelines at 60; Am. Compl. ¶ 14.) Thus, Plaintiff's argument appears to be that the PRB retaliated against him by taking his requested action. This makes little sense.

Moreover, the PRB did not "move[] the goal posts" as Plaintiff alleges. (Pl.'s Opp'n at 12.) Indeed, if the PRB was attempting to retaliate against Plaintiff by moving the goal posts, it makes little sense that it continuously kept his military history as a disqualifying factor. That is, why keep one disqualifying factor static if the PRB's goal was to frustrate Plaintiff by changing the basis of disqualification? Thus, Plaintiff has not adequately alleged facts to

demonstrate the PRB was retaliating against him when Plaintiff amended his EEOC complaint in December 2013.[9]

### 3. New York City Civil Service Commission Decision

The court finds that Plaintiff has failed to plausibly allege that the Commission retaliated against him. The most Plaintiff alleges in his Amended Complaint is that the "Commission was motivated by unlawful reasons, including his prior complaints relating to discrimination." (Am. Compl. ¶ 33.) This is not enough to allow a plausible inference of retaliation by the Commission, and wholly conclusory allegations without more specific facts are not sufficient to plausibly allege retaliation. See Arista Records, 604 F.3d at 120 (holding that formulaic recitations of a legal claim are not enough to raise a right to relief above the speculative level); see also Crenshaw v. Hartman, 681 F. Supp. 2d 412, 416 (W.D.N.Y. 2010) (holding that "[c]onclusory allegations of retaliation are not sufficient; the plaintiff must [allege facts] from which retaliation may plausibly be inferred" (quoting Sawyer v. Jowers, No. 08-CV-0186, 2008 WL 4791557, at *6 (N.D. Tex. Oct. 31, 2008))); Anderson v. Lapolt, No. 07-CV-1184, 2009 WL 3232418, at *5 (N.D.N.Y. Oct. 1, 2009) ("A plaintiff cannot state a retaliation claim in wholly conclusory terms, but rather, must provide a pleading that is 'supported by specific and detailed factual allegations.'" (quoting Friedl v. City of New York, 210 F.3d 79, 85-86 (2d Cir. 2000))). Moreover, the time between Plaintiff filing the EEOC complaint and the Commission hearing was over a year, which is too long to support an allegation of causation. See Dechberry, 124 F. Supp. 3d at 155.

Thus, Plaintiff's retaliation claim is DISMISSED WITHOUT PREJUDICE.[10]

---

[9] The court notes that the PRB did not find Plaintiff's employment history disqualifying in either the proposed or initial final disqualification—it was not until after Plaintiff edited his EEOC complaint that his employment history became a disqualifying factor. However, neither party has addressed whether merely changing the basis of disqualification counts as an adverse action in the context of a retaliation claim. Absent briefing, the court defers a ruling on the issue at this time.

18

## C. Discrimination under NYCHRL

Last, Defendant moves to dismiss Plaintiff's NYCHRL claim on the ground that Plaintiff failed to respond to Defendant's argument or address the claim at all in his briefing. (Def.'s Reply Mem. (Dkt. 39) at 2.) Count Three of Plaintiff's complaint alleges that Defendant discriminated against Plaintiff on the basis of his unemployment, his national origin, and retaliation, in violation of New York's CHRL. (Am. Compl. ¶ 41.) After Defendant addressed this claim in its Memorandum of Law in Support of its Motion to Dismiss, Plaintiff failed to respond to Defendant's argument in his opposition. (Def.'s Reply Mem. at 2.) The court agrees with Defendant, that because Plaintiff has abandoned his CHRL claim, the claim should be dismissed. See Peacock v. Suffolk Bus Corp., 100 F. Supp. 3d 225, 230 n.1 (E.D.N.Y. 2015) ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed." (internal citation and quotation marks omitted)).

Even if the court were to determine that the claim was not abandoned, it would still be dismissed because Plaintiff has failed to allege any facts demonstrating that his disqualification was based on his unemployment status, national origin, or retaliation. Arista Records, 604 F.3d at 120. Plaintiff alleges in his Amended Complaint that in February 2014, the PRB amended his disqualification to include his military history and employment history, but never alleges that he was discriminated against on the basis of his unemployment. (See Am. Compl. ¶ 23.) The amended disqualification states that Plaintiff was disqualified for his "employment history." (Id. ¶ 23.) The PRB has the discretion to consider and deny employment to probationary

---

[10] Both parties discuss whether Plaintiff's status as a priority hire is a protected activity and whether there was any discrimination or retaliation based on this fact. (See Def.'s Mem. at 12; Pl.'s Opp'n at 10.) Yet, Plaintiff fails to allege any facts demonstrating that the PRB was aware of Plaintiff's participation in the United States v. City of New York lawsuit and, indeed, he undermined that argument when he stated that other priority hire candidates were hired. (Am. Compl. ¶ 15.) Therefore, any claim that Plaintiff was retaliated against, simply for being a priority hire, is not adequately alleged in the Amended Complaint.

firefighters on the basis of their employment history. (PRB Guidelines at 68.) Indeed, an allegation that Plaintiff was not hired because of his employment history is far different than an allegation that Plaintiff was not hired because he was unemployed. Plaintiff does not allege the latter. Moreover, as discussed above, Plaintiff has failed to allege facts to demonstrate he was discriminated against based on his national origin or retaliated against.

Thus, Plaintiff's claim under Section 8-107(21) is DISMISSED WITH PREJUDICE.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

Given the nature of the factual gaps in the Amended Complaint, Plaintiff may be able to cure some or all of the issues identified in this Memorandum and Order. Accordingly, the court grants Plaintiff leave to file a second amended complaint within fourteen (14) days of the entry of this Memorandum and Order. Fed. R. Civ. P. 15(a)(2). Plaintiff is not permitted to amend his CHRL claim. If Plaintiff opts not to amend, the court will enter judgment in favor of the City of New York and close the case.

SO ORDERED.

Dated: Brooklyn, New York
May 31, 2016

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge